******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## MARK FULLER *v.* ANN BALDINO
### (AC 38660)

DiPentima, C. J., and Alvord and Lavery, Js.

*Syllabus*

The plaintiff filed a third party petition for visitation with the defendant's minor child after his relationship with the defendant ended. The defendant moved to dismiss the petition for lack of subject matter jurisdiction on the ground that the plaintiff failed to allege facts sufficient to satisfy the jurisdictional prerequisites set forth in *Roth* v. *Weston* (259 Conn. 202), specifically, that the plaintiff have a parent-like relationship with the child and that the denial of visitation would result in real and substantial harm to the child. The trial court granted the motion to dismiss and rendered judgment thereon dismissing the petition, from which the plaintiff appealed to this court, claiming, inter alia, that the trial court improperly dismissed his petition without an evidentiary hearing on the ground that he failed to allege facts sufficient to satisfy the jurisdictional prerequisites set forth in *Roth*. *Held* that the trial court properly dismissed the plaintiff's visitation petition for lack of subject matter jurisdiction without an evidentiary hearing, that court having properly determined that the petition failed to sufficiently allege that the denial of visitation would subject the child to real and significant harm; although the plaintiff alleged that he had a strong bond with the child, that the child suffered and was very emotional when unable to see him, and that he played a significant role in caring for the child's severe health conditions, those allegations did not rise to the level of neglect, abuse, or abandonment, as *Roth* and its progeny require, and the petition did not specifically state the type of harm the child would suffer if the plaintiff was denied visitation.

Argued May 24—officially released September 19, 2017

*Procedural History*

Petition for visitation of the defendant's minor child, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *S. Richards, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Marissa Bigelli Hernandez*, for the appellant (plaintiff).

*Bonnie Amendola*, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff, Mark Fuller, appeals from the judgment of the trial court dismissing his third party petition for visitation rights pursuant to General Statutes § 46b-59[1] and Practice Book § 25-4 as to the minor child of the defendant, Ann Baldino. The plaintiff claims that the court improperly dismissed his petition without an evidentiary hearing on the ground that he failed to allege facts establishing the requirements for jurisdiction set forth in *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002).[2] We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On July 31, 2015, the plaintiff filed a third party petition for visitation seeking visitation rights with regard to the defendant's child. The petition alleged the following facts. Since 2006, the plaintiff and the child "have had a parent-like relationship." The plaintiff ended his romantic relationship with the defendant around December, 2013, but "continued to parent the minor child until December, 2014." The plaintiff "has been the only father the minor child has known since the child was approximately two years old. Until December, 2014 . . . the [plaintiff] acted as a hands-on parent and held himself out as [the] father. The minor child recognizes the [plaintiff] as 'dad.' " Throughout the plaintiff's relationship with the child, the plaintiff provided financial support for the child; has "cared for the daily needs of the child"; and "has been involved with the major decisions concerning the child's health, education, and welfare." Finally, the petition alleged that the "[d]enial of visitation will cause real and significant harm to the child due to the relationship and bond formed between the [plaintiff] and minor child over the past nine years."

The defendant moved to dismiss the petition for lack of subject matter jurisdiction, arguing that the petition did not allege sufficient facts to establish the prerequisites for jurisdiction set forth in *Roth* v. *Weston*, supra, 259 Conn. 202, namely, that the plaintiff had a parent-like relationship with the child and that the denial of visitation would inflict real and substantial harm on the child. The defendant submitted an affidavit in support of her motion to dismiss in which she, inter alia, admitted that she granted the plaintiff visitation for a period of time after their 2013 separation but denied that the plaintiff had provided financial or other support to the child during their relationship.

Subsequently, the plaintiff filed an objection, arguing that his petition had set forth the necessary factual predicate for subject matter jurisdiction. In support of his objection, the plaintiff filed a memorandum of law and an affidavit in which he expanded upon some of the factual allegations made in his petition. As relevant in this appeal, the petitioner averred in his affidavit (1)

that he first met the child in 2005 and lived with the child and the defendant from 2006 until their separation in 2013; (2) that during that time period, and extending until December, 2014, he was the child's "primary parent" in that he took the child to his medical appointments and was "involved in all major decision making," including decisions regarding the child's health; (3) that he would care for the child's "severe health conditions" and presently does not know whether the child continues to receive proper care; (4) that, around the end of their relationship, the defendant "would take off for a day or two at a time without divulging where she was," leaving the child in his care; (5) that he has built a "very strong bond" with the child and that the child "suffers" and "is very emotional" when unable to see him; and (6) that the child has indicated that he misses the plaintiff and still considers the plaintiff to be his father.

The court heard argument on November 4, 2015, and ultimately granted the defendant's motion to dismiss on the record. The court concluded that, although the petition alleged sufficient facts to establish that the plaintiff had a parent-like relationship with the child, neither the petition nor the plaintiff's affidavit sufficiently alleged that the denial of visitation would cause the child to experience real and substantial harm. This appeal followed.

The plaintiff claims that the court improperly concluded that his petition and affidavit failed to allege facts establishing the jurisdictional requirements of *Roth*. Specifically, the plaintiff argues that the court, in determining that he failed to sufficiently allege that denial of visitation would cause real and substantial harm to the child, failed to consider that the emotional harm suffered by the child as a result of his separation from the plaintiff is sufficient under *Roth*.[3] According to the plaintiff, he pleaded the substantial harm requirement by virtue of his allegations of his close parental relationship with the child. The defendant concedes that the plaintiff sufficiently alleged a parent-like relationship with the child but asserts that the court properly concluded that the allegations do not amount to the sort of real and substantial harm contemplated by *Roth*. We agree with the defendant.[4]

We begin by setting forth the relevant standard of review and the applicable legal principles. "The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because a challenge to the jurisdiction of the court presents a question of law, our review of the court's

legal conclusion is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Citation omitted; internal quotation marks omitted.) *Fennelly* v. *Norton*, 103 Conn. App. 125, 133–34, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007).

In *Roth*, our Supreme Court recognized that the "constitutionally protected interest of parents to raise their children without interference undeniably warrants deference and, absent a powerful countervailing interest, protection of the greatest possible magnitude." *Roth* v. *Weston*, supra, 259 Conn. 228. To safeguard parents' rights against unwarranted intrusions into their authority, the court in *Roth* set forth requirements "that must be satisfied in order for a court . . . to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent . . . ." Id., 234. Specifically, "the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that the denial of the visitation will cause real and significant harm to the child. As we have stated, that degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by [General Statutes] §§ 46b-120 and 46b-129, namely, that the child is 'neglected, uncared-for or dependent.' The degree of specificity of the allegations must be sufficient to justify requiring the fit parent to subject his or her parental judgment to unwanted litigation. Only if these specific, good faith allegations are made will a court have jurisdiction over the petition." Id., 234–35.

In the present case, the plaintiff argues that he satisfied the real and significant harm requirement because he pleaded facts establishing that he and the child had "such a close father-child bond for an extended period of time . . . ." The court in *Roth* explained that, although "an allegation such as abuse, neglect or abandonment" clearly would satisfy the real and significant harm requirement; *Roth* v. *Weston*, supra, 259 Conn. 224; the "more difficult issue is whether the child's own complementary interest in preserving relationships that serve his or her welfare and protection can also constitute a compelling interest that warrants intruding upon the fundamental rights of parents to rear their children." Id., 225. The court stated: "We can envision circumstances in which a nonparent and a child have developed such substantial emotional ties that the denial of visitation could cause serious and immediate harm to that child. For instance, when a person has acted in a parental-type capacity for an extended period of time,

becoming an integral part of the child's regular routine, that child could suffer serious harm should contact with that person be denied or so limited as to seriously disrupt that relationship. Thus, proof of a close and substantial relationship and proof of real and significant harm should visitation be denied are, in effect, two sides of the same coin. Without having established substantial, emotional ties to the child, a petitioning party could never prove that serious harm would result to the child should visitation be denied. This is as opposed to the situation in which visitation with a third party would be in the best interests of the child or would be very beneficial. The level of harm that would result from the denial of visitation in such a situation is not of the magnitude that constitutionally could justify overruling a fit parent's visitation decision. Indeed, the only level of emotional harm that could justify court intervention is one that is akin to the level of harm that would allow the state to assume custody under . . . §§ 46b-120 and 46b-129—namely, that the child is 'neglected, uncared-for or dependent' as those terms have been defined." Id., 225–26; see also *Crockett* v. *Pastore*, 259 Conn. 240, 249–50, 789 A.2d 453 (2002) (petitioner must allege that denial of visitation would cause real and significant harm and not merely that visitation will be in best interests of child).

With these legal principles in mind, we turn to the present case. Because the first prong of *Roth* is not at issue in this case, we address only the requirement that the plaintiff allege real and substantial harm. We conclude that the plaintiff failed to carry the burden *Roth* sets where the type of harm alleged is emotional and stems from the denial of visitation itself. Although the plaintiff alleges that he has a "very strong bond" with the child and that the child "suffers" and is "very emotional" when unable to see him, these allegations do not rise to the level of neglect, abuse or abandonment. At the most, these allegations suggest that visitation would be beneficial to or in the best interests of the child, which falls short of the standard set forth in *Roth*. See *Roth* v. *Weston*, supra, 259 Conn. 226. Furthermore, the petition must state with *specificity* the type of harm the child will suffer. See *Martocchio* v. *Savoir*, 153 Conn. App. 492, 502, 101 A.3d 953 (2014); see also *Fennelly* v. *Norton*, supra, 103 Conn. App. 140–41 (merely checking box on application for visitation that stated that "[t]he applicant has/had a relationship with the child(ren) that is similar in nature to a parent-child relationship and denial of visitation would cause real and significant harm to the child(ren)" does not suffice for specific, good faith allegations required by *Roth*). Neither the plaintiff's petition nor his affidavit specifies what harm the child will suffer if he is denied visitation. Instead, the plaintiff asks the court to infer the neglect, lack of care, or abandonment from his allegation that the child will "suffer" as a consequence of the termina-

tion of their relationship. This is not enough to establish subject matter jurisdiction under *Roth*, which requires specific, good faith allegations that the denial of visitation will subject the child to real and significant harm. See *Crockett* v. *Pastore*, supra, 259 Conn. 249–50; *Roth* v. *Weston*, supra, 226.

In *Clements* v. *Jones*, 71 Conn. App. 688, 695–96, 803 A.2d 378 (2002), this court concluded that the plaintiff failed to "allege that a denial of visitation would result in harm to the child. Rather, the aspects of the application that can be construed as relating to harm state that the plaintiff often received the child in an ill state, apparently due to the child's asthma, and needed to nurse him back to health, that the plaintiff spent much time nursing the child back to health, that separation would be unjust and inhumane to the child, and that visitation would be in the best interests of the child. With regard to the specific allegations about the child's health and his asthma, we cannot conclude, without more, that those assertions constitute an allegation that rises to the level of abuse, neglect or abandonment contemplated by *Roth*." In the present matter, although the plaintiff alleges that he played a significant role in caring for the child's "severe health conditions" and does not currently know who is caring for the child, we cannot conclude, without more, that these assertions are akin to abuse, neglect, or abandonment as required by *Roth*. Accordingly, the trial court properly determined that the plaintiff's petition failed to allege the second jurisdictional element set forth in *Roth*, and properly dismissed the petition for lack of subject matter jurisdiction without an evidentiary hearing.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 46b-59 (b) provides in relevant part: "Any person may submit a verified petition to the Superior Court for the right of visitation with any minor child. Such petition shall include specific and good-faith allegations that (1) a parent-like relationship exists between the person and the minor child, and (2) denial of visitation would cause real and significant harm."

[2] In support of his overarching claim that the court improperly dismissed his third party petition for lack of subject matter jurisdiction, the plaintiff claims in his main brief that the court improperly (1) violated his due process rights when it denied his petition without an evidentiary hearing; (2) concluded that he lacked standing under § 46b-59; (3) applied § 46b-59 and relevant case law; (4) found that he did not plead sufficient facts that could be proven through clear and convincing evidence; (5) precluded him at oral argument from citing to similar trial court cases as persuasive authority; (6) failed to consider public policy; and (7) decided that he did not meet his burden of proof to invoke the trial court's subject matter jurisdiction. Our review of the plaintiff's briefs reveals that these arguments all contribute to the plaintiff's central claim that the court erroneously determined that he had failed to plead the jurisdictional requirements of *Roth*. Accordingly, we address these arguments but do not distinguish between them as separate claims.

[3] The plaintiff also argues that the trial court misinterpreted *Roth* to require an allegation of unfitness against the parent as opposed to an allegation of real and significant harm to the child. As an initial matter, we agree that the harm component of *Roth* did not require the plaintiff to allege that the defendant was an unfit parent. See *DiGiovanna* v. *St. George*, 300 Conn. 59, 73, 12 A.3d 900 (2011) ("because the requisite harm for obtaining visitation

over a fit parent's objection is akin to, but falls short of, the neglected, uncared-for or dependent standard for intervention by the department, parents unsuccessfully may oppose visitation without necessarily being unfit or in need of such intervention"). Indeed, the jurisdictional requirements of *Roth presuppose* that the parent is not unfit. See *Roth* v. *Weston*, supra, 259 Conn. 234 (summarizing jurisdictional "requirements that must be satisfied in order for a court . . . to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent").

Upon review of the record, however, we conclude that, in assessing the sufficiency of the allegations, the trial court looked for *either* allegations of unfitness of the parent *or* allegations of real and substantial harm to the child. Where the parent is not unfit, there is a constitutionally required presumption that the parent's opposition to visitation is in the best interests of the child. See *Crockett* v. *Pastore*, 259 Conn. 240, 249, 789 A.2d 453 (2002); *Roth* v. *Weston*, supra, 259 Conn. 232. It is the plaintiff's burden to overcome this presumption "by alleging and demonstrating that without visitation the child would suffer real and significant harm." *Crockett* v. *Pastore*, supra, 49. Because, in reaching its conclusion, the court explicitly looked for allegations of real and substantial harm to the child, we see no basis for concluding that the court did not apply the proper standard as set forth in *Roth*.

[4] We note that, at oral argument before this court, the defendant twice conceded that it was appropriate for the trial court, in determining whether the plaintiff alleged the jurisdictional requirements set forth in *Roth* v. *Weston*, supra, 259 Conn. 202, to consider the factual averments set forth in the affidavit that the plaintiff filed in support of his objection to the motion to dismiss. The court observed in *Roth*, however, that, "[o]rdinarily, in determining whether the trial court had jurisdiction over a petition for visitation, we simply would examine the allegations *of the petition* and compare them to the jurisdictional requirements set forth herein." (Emphasis added.) Id., 235; see also *Fennelly* v. *Norton*, 103 Conn. App. 125, 139 n.11, 931 A.2d 269 ("[i]n the absence of any disputed issues of fact pertaining to jurisdiction . . . we think the admittedly high requirements of *Roth*, the strict application thereof and the policy considerations discussed therein require a court, when confronted with a motion to dismiss for lack of subject matter jurisdiction predicated solely on the application's failure to comply with *Roth, to decide that motion on the application itself*" [emphasis added; internal quotation marks omitted]), cert. denied, 284 Conn. 918, 931 A.2d 936 (2007); *Fennelly* v. *Norton*, supra, 139 ("[b]ecause the defendant's motion to dismiss for lack of jurisdiction was predicated on the insufficiency of the application for visitation, it was inappropriate for the court to look beyond that pleading and permit the plaintiffs to augment the application with additional allegations at the evidentiary hearing"); see also Practice Book § 25-4 ("[e]very *application* . . . in an action for visitation of a minor child . . . shall state . . . the facts necessary to give the court jurisdiction" [emphasis added]). Although these authorities suggest that courts determining whether the jurisdictional requirements of *Roth* have been satisfied cannot look beyond the four corners of the application itself, we need not decide that issue in the present case because the defendant does not claim error in that aspect of the court's decision, and, moreover, because the facts alleged in the affidavit, even if considered, are insufficient to satisfy *Roth*.